## Daniel Watson v. Jules F. Roth, Adm'r, etc.

91    111<br>a191s  382<br><br>91    111<br>f105    53

1.   BANKERS — *General Duty in Loaning the Money of Others.*— When a banker accepts money of person to be loaned by him generally, the law implies an obligation on his part to use due care to loan it to responsible persons.

Assumpsit, for money injudiciously loaned.   Appeal from the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER,

Judge, presiding. Heard in this court at the May term, 1900. Affirmed. Opinion filed September 11, 1900.

H. M. STEELY and O. M. JONES, attorneys for appellant.

PENWELL & LINDLEY and S. A. BRISTOW, attorneys for appellee.

MR. JUSTICE WRIGHT delivered the opinion of the court.

This is an action of assumpsit by appellee against appellant, the declaration in the first instance containing the common counts, to which three special counts were later added. The first special count is to the effect that Nancy Gilbert, then living, but since deceased, of whose estate appellee is administrator, placed in the hands of appellant $3,000 to loan, which he agreed to do; that it was his duty, and he so promised, to use reasonable and ordinary skill and diligence in doing such business, but he negligently loaned it to Dwiggins Brothers, when by the exercise of reasonable care, which he failed to do, he could have known, which was the fact, they were insolvent, whereby the money was lost. The second count avers appellant received the money to loan, and promised to use reasonable care and diligence in lending it, and in that respect failed; that Dwiggins Brothers, to whom he lent it, were insolvent at the time, which fact appellant might have known by the use of reasonable care. The third count is to the effect that appellant entered into a contract with the deceased to loan the money in a careful and prudent manner, so that the same would be secure, and so it became his duty, and he promised to use reasonable and ordinary care in loaning the money, but in disregard of his duty and promise, loaned it to Dwiggins Brothers at a time when they were insolvent, and when by the use of due care and diligence he might have known of such insolvency. The pleas of the general issue and of tender were interposed to the declaration, and upon trial by jury of the issues thus formed, a verdict for $3,000 was returned against appellant, upon which, after overruling appellant's motion for a new trial, the court

gave judgment, from which he brings this appeal, and to effect a reversal of such judgment, various alleged errors are argued, chiefly (1) that the evidence does not support the allegations of the declaration; (2) the agent having been guilty of no fraud, only a want of care being charged, appellee could maintain this suit only after proving his claim against the bankrupts' estate; (3) a partial acceptance of the tender is equivalent to an acceptance of the whole; (4) it was erroneous to submit the special interrogatory that was given to the jury; (5) the court erred in the instructions to the jury and in overruling the motion for a new trial, especially on the ground of newly discovered evidence.

Appellant and Nancy A. Gilbert both resided at Rossville, Ill., where the former was engaged in banking, and the latter having considerable property, did business with him as such banker. Mrs. Gilbert, who was in failing health, visited Florida, and later, in the fall of 1896, she went to Califarnia and there remained until July 3, 1898, when she died. While she was away from Rossville, Mrs. Gilbert intrusted the collection of her rents, interests and loans to appellant and also the reinvestment of the same. June 20, 1898, appellant, of the funds of Mrs. Gilbert then in his hands, loaned $3,000 to Dwiggins Brothers, merchants doing business in Rossville, and took their note payable to Nancy A. Gilbert, due in two years, with six per cent interest, without security. The money so obtained was applied upon indebtedness either due to appellant, or for which he was liable. At the time the indebtedness of Dwiggins Brothers aggregated about $24,400, $9,000 of which was due to appellant, and their assets were not equal to their indebtedness, and in February, 1899, they failed in business and were later adjudged bankrupts. Previous to the loan of June 20, 1898, appellant had, with the consent of the deceased, lent her money to Dwiggins, and there had been more or less correspondence relative to the business, in which the Dwiggins Brothers were mentioned, and it was contended by appellant upon the trial, and the same is

renewed in this court, that the latter loan was made by the
consent and request of the deceased, and this formed one of
the material issues of fact submitted to the jury.

It is first insisted that the evidence does not support the
allegations of the declaration because, as we understand
the argument, the declaration avers an express contract on
the part of appellant to loan the money with due care,
whereas, as contended, the evidence fails to establish an
express promise in that regard, but only raises an implied
promise, wherefore there is a variance, and can be no
recovery. While one or more of the counts may be so con-
strued, yet, we are of the opinion, some of the averments of
the declaration when properly construed are to the effect
the appellant accepted the money of the deceased to be
loaned by him generally, and if this was true, the law would
imply the obligation on his part to use due care to let it to
responsible persons, and hence we think this point is de-
prived of the force attached to it by counsel, if indeed it is
otherwise entitled to the weight attributed to it in the
argument, and we think there is less merit in the point that
it was appellee's duty to prove the claim against the bank-
rupt's estate, for the reason that at no time had the note
been accepted, and was for such reason beyond his control.
One of the defenses was that appellant tendered the note
in question, with other notes and a certain amount of money,
about which latter there was no dispute, and was accepted,
but the $3,000 note rejected, which the court held was per-
missible. Appellant insists that the partial acceptance car-
ries with it the conditions he attached to the entire tender
and appellee is estopped to deny the acceptance also of the
$3,000 note. We are unable to concur in this view. There
was no controversy relative to the other items, which were
independent of the one rejected, and therefore no harm
resulted to appellant by the acceptance of them. Neither
was appellant harmed by the submission of the special in-
terrogatory to the jury, finding to the effect that appellant
was not reasonably prudent and careful in making the loan
in question, even if it was evidentiary merely, as argued by

counsel. If the finding was evidentiary merely, it did not affect the general verdict, and therefore, if improperly given to the jury, was but a harmless error. If the finding was of an ultimate nature, which we are inclined to think it was, it was consistent with the general verdict, and was, therefore, proper. We believe the jury were also warranted in their general verdict. The deceased was sick and absent from her usual home, and, it is evident, relied upon appellant, in whom she had confidence, to securely invest her money; and while she may have appeared, in her letters, to consent to the loan to Dwiggins, it is also apparent she relied upon the knowledge and judgment of appellant as her agent. He was present and knew, or by the exercise of ordinary observation as a banker, ought to have known, the financial standing and condition of Dwiggins Brothers; and the deceased woman had the right to rely upon the confidence ordinarily imposed in those engaged in the business of banking, which is that a banker would not loan the money of others, where by the exercise of due care he would not loan his own. It is beyond our conception to believe that an ordinary banker, in the exercise of common prudence, would not know the financial situation of merchants doing business in his own town, and knowing such situation as the evidence discloses in this case, also know it would be a precarious loan to them, for two years without security, and in the form of a common note, upon which judgment could not be taken until it had matured.

We have examined the instructions, and are constrained to believe they present the law of the case as fairly as the issues tried, and the rights of appellant demanded.

After the trial a letter of the deceased was found advising appellant to make the loan that was made, and it is claimed this was of such a conclusive character as to demand a new trial for that reason. It was the duty of appellant, as the agent of the deceased, to have exercised the ordinary care and prudence common to bankers in ascertaining the financial standing and situation of the persons to whom a loan is contemplated; and in the absence of the principal,

to have advised her concerning the same; and had he done so with due care, we can not believe the deceased would have advised him to make the loan. We are of the opinion, therefore, that such letter was written either for the want of such proper advice by appellant, or that it was induced by advice negligently given to her, without proper care in ascertaining the true situation of Dwiggins Brothers, and in either case such letter would be unavailing in defense. Besides, the letter is cumulative, merely, to the evidence that was introduced, and is by no means of a conclusive nature, and it was not, therefore, availing for a new trial.

Finding no material error in the record and proceedings of the Circuit Court, its judgment will be affirmed.